BANHAGEL *v.* SCHOOL BOARD OF DISTRICT NO. 1 OF
BRONSON AND BETHEL TOWNSHIPS.

1. PRIMARY SCHOOLS—MILL TAX—SURPLUS—APPROPRIATIONS.
   2 Comp. Laws, § 4665, subd. 12, providing that a school dis-
   trict, after having maintained a school at least eight months
   in a fiscal year, may appropriate any surplus moneys arising
   from the one-mill tax to certain other purposes, does not per-
   mit an appropriation to such purposes, in December, of any
   part of the mill tax of the then current year.

2. SAME—FINDINGS OF COURT—EVIDENCE.
   Evidence that at an annual school meeting the treasurer
   reported the amount of money on hand, and thereupon the
   meeting voted to raise by tax a definite sum for school pur-
   poses, does not warrant a finding that the district appropri-
   ated its surplus mill-tax money of the previous year to, and
   made it a part of, the mill tax of the current year.

*Certiorari* to Branch; Yaple, J.   Submitted June 23,
1903.   (Calendar No. 19,970.)   Decided September 22,
1903.

*Mandamus* by Edward Banhagel to compel the school
board of district No. 1 of Bronson and Bethel townships to
issue a certain warrant for money.   From an order deny-
ing the writ, relator brings *certiorari*.   Reversed.

*V. H. & H. H. Smith,* for relator.

*Campbell & Johnson,* for respondent.

HOOKER, C. J.   The relator applied to the circuit court
for a writ of *mandamus* to compel the respondent, a
school district board, to issue and pay to him its warrant
for $1,200 for certain money raised by mill tax belonging
to the school district.   Issues were framed and submitted
to the court without a jury, and we insert his findings of
fact as at once showing the material issues, and his finding
thereon:

"The parties in this cause being in court by their respective attorneys, ready for trial, and the issue joined therein having been brought on for trial before the court without a jury, and the said court, having heard the proofs and allegations of the parties and the arguments of counsel, after due deliberation thereon, finds:

"1. That the relator, Edward Banhagel, under a contract with the respondent, built and constructed a schoolhouse, and received therefor in payment the contract price; that relator lost money upon the contract and the building by reason of changed conditions which entailed to Banhagel a considerable loss, and that said relator had an equitable claim against respondent, or at least such a claim as would have been a proper basis for extra compensation by the said school district.

"2. That on the 19th day of December, A. D. 1901, a special meeting of said school district was held, and a majority vote was had thereat to pay to said Edward Banhagel, the relator, the sum of $1,200 from the one-mill tax belonging to said district.

"3. That, of the amount to be thus appropriated from the one-mill tax, the sum of $588.78 was in the hands of the treasurer of said school district, and was the surplus arising from the one-mill tax unused for the previous school year 1900 and 1901, but which had been turned over to the treasurer of said school district for the ensuing year, and had become a part of the one-mill tax fund for the year 1901; that $622.22 of said amount was the mill tax for the current school year 1901 and 1902, and had not at any time become a surplus fund, as provided by section 4665 of Miller's Compiled Laws of the State of Michigan

"4. That the fund from which the relator seeks to reimburse himself for losses sustained as aforesaid, by reason of the vote of said school district, was not, at the time of said school meeting, a fund which the said school district had power to appropriate to any other purpose than that of maintaining a school in the said district, as provided by section 4665 of Miller's Compiled Laws of the State of Michigan.

"5. That, if the relator has a claim against said school district capable of enforcement, such claim is not enforceable under the present action to compel the payment of the same from the fund aforesaid.

"Writ denied.

                              "GEORGE L. YAPLE,
                                    "Circuit Judge."

Upon application of the relator, the second finding was afterwards amended to read as follows:

"2. That on the 19th day of December, A. D. 1901, a special meeting of said school district was regularly held, and a majority vote was had thereat to pay said Edward Banhagel, the relator, in recognition and settlement of his said claim, the sum of $1,200 from the one-mill tax belonging to said district."

The cause is before us on *certiorari* at the instance of relator. The proceedings under which this alleged appropriation was made were, first, a notice, which we assume to have been legally published, in which it was stated that the meeting was to be held "for the purpose of voting to appropriate $1,200 of the surplus money arising from the one-mill tax now in the treasury of said school district for the purpose of building and paying for building and constructing the schoolhouse of said school district. Dated December 13, A. D. 1901." The following is a copy of the record of the proceedings of the special meeting:

"BRONSON, MICH., Dec. 19th, 1901.
"Special Meeting.

"The special meeting of the legal voters of school district No. 1, Bronson and Bethel, met pursuant to published notice at the schoolhouse in Bronson, Dec. 19th, 1901. The meeting was called to order by Mr. Warner, the moderator. The call was also read by the moderator. The clerk read the itemized expense of building the schoolhouse. Motion was made to appoint Randall Powers and Harry Ruple for tellers. Motion carried. Motion was made to appoint A. L. Phillips and Alonzo Ruggles for clerk. Motion was made to appoint John Shurtz as challenger. Mr. Rudd came forward and administered the oath of office, and the moderator declared the election open. Time, 9:15 p. m. The ballot-box was kept open for two hours, and, on counting the ballot, the following result was announced: Whole number of votes cast, 109.

"For the appropriation, Yes _____ 57
"For the appropriation, No _____ 52
                                                   ———
                                                   109

"The moderator declared the appropriation carried by five majority. Adjourned.

"WELLS KNAPP, Director"

Passing any question that might arise over the sufficiency of a notice that failed to apprise the voters that this was an appropriation to cover an equitable claim, rather than a legal one, to pay which the district was bound by contract, we may say that this vote was no more than an appropriation of $1,200 from the surplus of a particular fund for the purposes mentioned. It is noticeable that it was not an appropriation of $1,200 to pay to the relator for extra compensation. But, as no point is made upon that, we will assume that the district so understood and intended it. It then becomes necessary to inquire whether this fund might lawfully be thus appropriated. The finding shows that the district had on hand in September the sum of $588.78, which arose from the one-mill tax of the previous year, and which was a surplus remaining after its having had nine months school for that year. Subsequently there had been levied a mill tax for the then current year—*i. e.*, 1901 and 1902—of $686.22. None of this had been paid over to the district, and it is claimed that only a small portion of it had been collected by the township treasurers, on December 19, 1901, which was the date of the special school meeting. At all events, it had not been reported to the district, and was not in "the treasury of said district," as per the notice above set forth. 2 Comp. Laws, § 4665, subd. 12, confers upon the voters at a school-district meeting lawfully called the power—

"To appropriate any surplus moneys arising from the one-mill tax after having maintained a school in the district at least eight months in the school year, for the purpose of purchasing and enlarging school sites, or for building or repairing schoolhouses, or for purchasing books for library, globes, maps, and other school apparatus, or for any incidental expenses of the school."

Under this provision it is clear that there was no surplus for the year 1901 and 1902 to appropriate, as the school had not been held eight months during that fiscal year. Neither was the fund in the district treasury, as shown above. This eliminates that portion of relator's claim.

The finding shows that the surplus of $588.78 remaining over from the previous year had been previously appropriated to and become part of the mill-tax fund for the year 1901 by action of the district at its annual meeting. We assume that this finding was based upon the testimony that, at the annual meeting held in September, it was reported as a part of the school fund on hand, and that it was considered in determining how much it would be necessary to raise by tax to support the school for the next year. This finding of fact rests upon evidence which does not warrant it. The only proof upon the subject shows that at the annual meeting the district treasurer reported the amount of money in the treasury belonging to the district. Thereupon the meeting passed a resolution to raise by tax upon the district a definite sum for school purposes. We should not assume that there was an intention to appropriate the $588 surplus mill tax to such purpose in the absence of any action tending to show it. In the absence of definite action, we cannot assume that the voters intended to deprive the district of its control over this surplus as provided by 2 Comp. Laws, § 4665, subd. 12.

The order is reversed, and the record will be remanded, with directions to the circuit court to issue the writ as prayed for the sum of $588.78. The relator is entitled to costs of both courts.

The other Justices concurred.